[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12091

_____

D.C. Docket No. 1:13-cr-00463-LMM-LTW-2

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

DAVID LAZARO OLIVA,
a.k.a. Davisito,

Defendant–Appellant.

_____

No. 17-11497

_____

D.C. Docket No. 1:13-cr-00463-LMM-LTW-1

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

RAFAEL GOMEZ URANGA,

Defendant–Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 18, 2018)

Before WILSON and NEWSOM, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

This case begins with two large-scale warehouse burglaries in October and November of 2011.  After a lengthy investigation, David Lazaro Oliva and Rafael Gomez Uranga were indicted in November 2013 in connection with those burglaries and charged with conspiracy to commit interstate transportation of stolen property, in violation of 18 U.S.C. § 371, and aiding and abetting the interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2. They were arrested on these charges nearly twenty-three months later, in October 2015.  While in the District Court, Oliva and Uranga moved to dismiss the

_____

[*]Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

indictment based on a Sixth Amendment speedy trial violation.  The motions were referred to a Magistrate Judge, who held an evidentiary hearing and entered a report and recommendation.  The Magistrate Judge found that the delay between indictment and arrest was the result of the Government's gross negligence, but she ultimately recommended that the motions be denied.  The District Court agreed with the Magistrate Judge's recommendation.  Subsequently, Oliva and Uranga pled guilty to the conspiracy charge, retaining the right to appeal the District Court's denial of their motions to dismiss.  They do so in this consolidated appeal.

Although the lengthy delay between the indictment and arrest was the result of the Government's negligence, we hold that the delay did not amount to a Sixth Amendment violation.  Accordingly, we affirm.

## I.

On October 23, 2011, a group of men burglarized a SouthernLinc warehouse in Gwinnett County, Georgia.  They escaped with a truckload of cellphones valued at $1,789,980.  Another group of men attempted a similar burglary of a Max Group warehouse, also located in Gwinnett County, on November 28, 2011.[1]  This group,

---

[1] The extent to which the personnel overlapped between the two burglaries is not clear from the record.

however, tripped the warehouse's burglary alarm, causing the police to arrive at the site. Uranga was arrested in his SUV near the Max Group location.[2]

The FBI opened an investigation into the burglaries on November 21, 2011.[3] On or about March 27, 2012, Michael Donnelly, a Gwinnett County Police Department officer serving as an FBI Task Force Officer, was assigned as the sole investigator in the case. This was Donnelly's first time serving as a solo investigator. His expansive investigation involved, *inter alia*, twenty-five witnesses located across various states, nine suspects, nearly 100 exhibits, shoe-tread analysis, and numerous search warrants. Donnelly's investigation continued until at least June 2013.

Oliva and Uranga were indicted by a federal grand jury on November 25, 2013, about two years after the attempted Max Group warehouse burglary. Donnelly was responsible for locating and arresting the Appellants, but he mistakenly believed that this was the United States Marshals Service's ("USMS")

---

[2] Four other men were in Uranga's SUV, and they escaped on foot. The record does not specify whether Oliva was one of these men. The record indicates only that Oliva rented a U-Haul truck shortly before both burglaries and that the person who attempted to sell the stolen phones identified Oliva as "part of a robbery crew." Uranga, on the other hand, was linked to the Max Group burglary by video, shoe prints, and proximity; and he was linked to the SouthernLinc burglary by a similar *modus operandi* and cellphone location data and records.

[3] The parties' briefing, the Magistrate Judge's report and recommendation, and the District Court order at issue all state that the FBI opened the investigation into "both" burglaries on November 21, 2011, before the Max Group burglary was attempted. The District Court noted that "presumably the investigation began with the first burglary only but then incorporated the second burglary once it was committed." We, too, assume this to be the case.

responsibility.[4]  In or around January 2014, Donnelly realized that nothing was

happening with the case and conferred with Josh Thompson, another FBI Task

Force Officer who had recently worked with the USMS.  Donnelly gave Thompson

copies of the arrest warrants and possible locations of the Appellants, and asked

Thompson to communicate with the USMS about locating them.

According to Thompson's testimony during the evidentiary hearing before

the Magistrate Judge, he called someone from the USMS within a month after

conferring with Donnelly and learned that Marshals are not responsible for

executing arrest warrants when the FBI controls the case.  Then, not more than a

month later, in or around February or March 2014, Thompson met with Donnelly

to return the warrants, and the two discussed some information.  Neither could

recall at the evidentiary hearing exactly what was discussed when Thompson

returned the warrants.  Thompson testified, however, that he did *not* inform

Donnelly that the FBI handles its own arrests, and that Donnelly did *not* ask about

FBI procedure or whether the USMS would begin locating the Appellants.

Donnelly testified at the same evidentiary hearing that, after this second meeting

with Thompson, he was not under the impression that he was responsible for

arresting the Appellants.  Donnelly never followed up with the USMS about the

---

[4] Donnelly believed this because in Gwinnett County, the investigating officer is not responsible for locating and arresting defendants—that task falls to the Sheriff's Department—and he just assumed that it worked the same way in the federal system with respect to the USMS.

matter.  There was also no communication between Donnelly and the U.S. Attorney's Office concerning the arrests.  The Assistant U.S. Attorney who secured the indictment, Karlyn Hunter, left the U.S. Attorney's Office in September 2014 (almost a year after the indictment), and a new prosecutor was not assigned to the case until October 2015 (more than a year thereafter).  Donnelly had no contact with the U.S. Attorney's Office during this two-year period.

Donnelly took no further action on the case until late September or early October of 2015, when his supervisor informed him that he, not the USMS, was responsible for locating and arresting the Appellants.  Donnelly began searching for them within twenty-four hours after receiving this information.  Notably, counsel for the Appellants conceded at oral argument that there was no evidence of bad faith in this case and that the speed with which Donnelly acted after he learned that he was responsible for making the arrests suggested the delay "probably was an honest mistake."[5]  Uranga was ultimately arrested in the Southern District of

---

[5] In her report and recommendation, the Magistrate Judge stated that it was "inexplicabl[e]" and "defie[d] logic" that Donnelly and Thompson did not discuss the FBI's responsibility for handling its own arrests at the time that Thompson returned the warrants in February or March 2014.  The Appellants argued in their briefs on appeal that this language constitutes a finding by the Magistrate Judge—the only judge to hear the testimony—that Donnelly's claim of lack of knowledge of the FBI's responsibility for making the arrests was not credible.  We have two things to say about that.  First, as the District Court rightly noted, the Magistrate Judge did not say that their testimony was not credible.  Rather, the language that she used ("inexplicabl[e]" and "defie[d] logic") merely acknowledged that their actions were puzzling and not logical.  Second, the Appellants' argument in their briefs on this point is difficult to reconcile with the position that they took at oral argument.  As just noted in the text above, counsel for the Appellants conceded at oral argument that there was no evidence of bad

Florida on October 9, 2015,[6] and Oliva was arrested in the Southern District of New York four days later.

On December 11, 2015, Uranga moved to dismiss the indictment for lack of a speedy trial. Oliva did the same about three months later.

## II.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" In light of the "unique policies" underlying the speedy trial right, courts must "set aside any judgment of conviction, vacate any sentence imposed, and dismiss the indictment" if the right is violated. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).

This Circuit assesses speedy trial claims under the four-factor test derived from *Barker v. Wingo*, weighing (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) actual prejudice to the defendant. 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); *see*

---

faith and that the delay "probably was an honest mistake." If, however, Thompson told Donnelly in February or March 2014 that the FBI was responsible for making the arrests (which is essentially what the Appellants are arguing when they suggest that Donnelly and Thompson did not testify truthfully at the evidentiary hearing), then that would indicate there *was* bad faith and that the subsequent delay was *not* the result of an honest mistake. After reviewing the record, we agree with the position that defense counsel took at oral argument and not the one that the Appellants argued in their briefs: there is no evidence of bad faith or anything other than an honest mistake here.

[6] When Uranga was first arrested after the Max Group burglary, the arresting officers took Uranga's wallet, which contained a driver's license listing the address where he resided throughout this case. It was at this address that he was arrested by the FBI.

*also Villarreal*, 613 F.3d at 1350.  The first factor, length of the delay, serves a triggering function:  it must first be satisfied for the court to analyze the other factors.  *Villarreal*, 613 F.3d at 1350; *see also United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003).  A post-indictment delay exceeding one year is generally sufficient to trigger the analysis.  *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006); *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996).  Importantly, if the first three factors "weigh heavily against" the Government, the defendant need not show actual prejudice, the fourth factor. *Ingram*, 446 F.3d at 1336.  If a defendant proves the length of the delay is sufficient to trigger the *Barker* analysis, however, that does not necessarily mean that factor weighs heavily against the Government; the two inquiries are separate. *See Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 2690–91 (1992); *Villarreal*, 613 F.3d at 1350.

### A.

As earlier noted, Oliva and Uranga's motions to dismiss were referred to a Magistrate Judge who, in a report and recommendation, recommended that the motions be denied.  The Magistrate Judge performed a three-step inquiry:  first, she analyzed whether the first three *Barker* factors weighed against the Government; next, she separately analyzed whether those factors "weighed *heavily*" against the Government; finally, after concluding that the first three factors did not weigh

heavily against the Government, she assessed whether the Appellants could prove actual prejudice, the fourth factor.

In her first step, the Magistrate Judge noted that the Government conceded that the first and third factors, length of the delay and assertion of the right, weighed against it.[7]  The Magistrate Judge then found that the Government was "grossly negligent" in failing to procure the Appellants' arrests, and accordingly held that the second factor—reason for the delay—also weighed against the Government.

After determining that the first three factors weighed against the Government, the Magistrate Judge next analyzed whether they did so heavily. Drawing upon the two most relevant Eleventh Circuit cases—*Ingram*, 446 F.3d at 1332, and *Clark*, 83 F.3d at 1350—the Magistrate Judge concluded that the length of the delay, though sufficient to trigger the *Barker* analysis, did not weigh heavily against the Government.  In reaching this conclusion, the Magistrate Judge factored in only the post-indictment delay period.  Although "inordinate pre-indictment delay" can also weigh heavily against the Government, *see Ingram*, 446 F.3d at 1339, the Magistrate Judge concluded that the two-year pre-indictment delay here was not "inordinate" given the complexity of Donnelly's investigation.

---

[7] The Government conceded that the length of the delay was sufficient to trigger the rest of *Barker*'s analysis, but not that it was so long as to be weighed heavily against it.  Put another way, the concession pertained to the first part of the Magistrate Judge's analysis, not the second. *See Doggett*, 505 U.S at 651–52, 112 S. Ct. at 2690–91; *Villarreal*, 613 F.3d at 1350.

Finally, since the first three factors did not each weigh heavily against the Government, the Magistrate Judge assessed whether the Appellants could prove actual prejudice. She found that they could not, and she recommended that their motions be denied.

The Appellants objected to the report and recommendation. Oliva contended that the Magistrate Judge should have factored pre-indictment delay into her determination. He also argued, more generally, that the length of the delay weighed heavily against the Government in light of its gross negligence. Uranga, apparently believing that the Magistrate Judge concluded that the *reason for*—not the *length of*—the delay did not weigh heavily against the Government, asserted that the Magistrate Judge erred in reaching that conclusion.[8]

The Government responded, devoting the majority of its brief to supporting the Magistrate Judge's conclusion that the length of the delay did not weigh heavily against it. Unlike Uranga, the Government believed that the Magistrate Judge had concluded that the *reason for* the delay *did* weigh heavily against it. Importantly, the Government did not argue against that purported conclusion, but simply acknowledged:

> In evaluating the reason for delay, the Magistrate Judge found that the Government was "grossly negligent" in failing to procure the Defendants' arrests and, without stating so explicitly, concluded that

---

[8] Uranga, like Oliva, also objected to the Magistrate Judge excluding pre-indictment delay time from her *Barker* analysis.

this factor weighed heavily against the Government by stating: "[T]he Government's negligence in this case is every bit as culpable as that of the ATF special agent in *Ingram*."

## B.

The District Court adopted the Magistrate Judge's report and recommendation.  But, like Uranga, it operated under the assumption that the Magistrate Judge recommended that the motions be denied because the *reason for*, not *length of*, the delay did not weigh heavily against the Government.[9]  The District Court held that because the Appellants did not produce evidence of bad faith by the Government—the delay between indictment and arrest was proven only to result from gross negligence—the reason for the delay did not weigh heavily against the Government.

To support this conclusion, the District Court looked to *United States v. Bibb*, 194 F. App'x 619 (11th Cir. 2006), which states that "'[g]overnment actions [which] are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in

_____

[9] The District Court stated, "The Magistrate Judge found, and both parties agreed, that the length of the delay was presumptively prejudicial, triggering the other three *Barker* factors.  The Magistrate Judge did *not* find that the reason for the delay weighed heavily against the Government, as Oliva suggests."  The Court further stated in a footnote that because the Government conceded the "length of delay" and "assertion of the right" factors, it assumed *arguendo* that those factors weighed heavily against the Government.  Thus, the Court added, if it were to find that the reason for the delay weighed heavily against the Government, all three factors would weigh heavily against the Government and the Appellants would not have to show actual prejudice.

Contrary to the District Court's belief, the Government conceded only that the length of the delay was sufficient to trigger analysis of the rest of the *Barker* factors, not that the delay weighed heavily against it.  *See supra* note 7.  Given this limited concession, the length of the delay factor was still at issue.

11

favor of a finding that a speedy trial violation occurred.'"  *Id.* at 622 (quoting *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997)).  Although the Government caused the delay, the District Court held that its conduct could not be characterized as "dilatory," as the Appellants argued, because in context dilatory requires intent.  Here, the Government caused only unintentional delay through its negligence; there was no bad faith.  The District Court also refused to factor the pre-indictment delay period into its decision, agreeing with the Magistrate Judge that the complexity of Donnelly's investigation justified the delay.

Thus, the District Court held that the first three *Barker* factors did not each weigh heavily against the Government, and that the Appellants had failed to prove actual prejudice, the fourth factor.  The District Court accordingly denied their motions to dismiss.

Oliva and Uranga appealed.  On appeal, they do not challenge the District Court's holding that they failed to prove actual prejudice.[10]  Rather, they argue that the District Court had found that the first and third *Barker* factors weighed heavily against the Government, and that it erred in holding that the reason for the delay, the second *Barker* factor, did not weigh heavily against the Government, rendering actual prejudice irrelevant.

---

[10] In fact, the Appellants expressly conceded at oral argument that they cannot show actual prejudice

First, the Appellants contend that this Circuit's speedy trial right jurisprudence does not require intentional delay or bad faith by the Government. Instead, they maintain that the term "dilatory," as used *Schlei* (and as later quoted in *Bibb*) refers both to unintentional and intentional delay.  Therefore, they argue that the Government's gross negligence—Donnelly's near-complete inaction, Thompson failing to relay that the USMS was not assigned arrest responsibility, and the U.S. Attorney's Office failing to check on the Appellants' arrest status— weighs heavily against it.  The Appellants add that the pre-indictment delay should also have been factored into the Court's analysis, providing more weight to the Government's negligence.  *See Clark*, 83 F.3d at 1353 ("[Our] toleration of negligence varies inversely with the length of the delay caused by that negligence.").

Next and alternatively, the Appellants argue that the Government's attempt to arrest them was so minimal that it cannot be characterized as "diligent" or performed "in good faith," requiring that the second *Barker* factor weigh heavily against the Government.  *See United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (noting the Government's "'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial") (quoting *Smith v. Hooey*, 393 U.S. 374, 383, 89 S. Ct. 575, 579 (1969)). The Appellants maintain that they did not have to prove actual prejudice because,

under either theory, the reason for the delay weighs heavily against the Government and the Government conceded that the other two factors, length of the delay and assertion of the right, did so too.  Their motions to dismiss, the Appellants argue, should have therefore been granted.

The Government asserts that the delay in the Appellants' arrests was due only to negligence, not bad faith.  The District Court thus properly denied the motions, as intent or bad faith is required for the second *Barker* factor to be weighed heavily against the Government.  The Government also contends that it never conceded that the length of the delay weighs heavily against it.  Although it did concede that the length of the delay was sufficient to trigger the *Barker* analysis, it did not also concede that the delay's length was so great as to be weighed heavily against it.

### III.

### A.

Whether the Government violated a defendant's Sixth Amendment right to a speedy trial is a mixed question of law and fact.  *Villarreal*, 613 F.3d at 1349.  We review a district court's legal conclusions *de novo* and its factual findings for clear error.  *Id.*

Here, we are tasked with reviewing the District Court's application of the *Barker* factors.  As noted, the Appellants do not challenge the District Court's

finding of no actual prejudice, the fourth factor. And, the Government concedes the third factor, assertion of the right.[11] The Government, however, did not concede that the length of the delay weighed heavily against it.[12] Thus we address the first two factors, length of the delay and the reason for it. As discussed below, these factors overlap to an extent, so we address them together.

Different reasons for delay are accorded different weights. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. An intentional attempt to delay trial in order to hinder the defense is "weighted heavily against the government." *Id.* In contrast, a valid excuse, such as a missing witness, justifies reasonable delay. *Id.* Negligence falls between these two extremes. It is "more neutral" and "should be weighted less heavily" than bad-faith acts. *Id.* But negligence "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Indeed, "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying

---

[11] Although the Government concedes that the Appellants timely asserted their speedy trial rights and, thus, it stipulates that the third factor weighs against the Government, it does not say whether that factor weighs *heavily* against the Government. This Court has previously determined that the third *Barker* factor weighed "heavily" against the Government where the defendant asserted his right to a speedy trial soon after learning of the indictment and arrest warrant. *See Ingram*, 446 F.3d at 1335, 1338. By contrast, this Court has also determined that, where a defendant asserted his right to a speedy trial but also moved for four continuances prior to that trial, the third *Barker* factor did not weigh "heavily" against the Government. *See United States v. Register*, 182 F.3d 820, 828 (11th Cir. 1999). Because the Government does not argue this factor, we assume for our analysis that it weighs heavily against the Government and do not discuss it further.

[12] *See supra* notes 7, 9.

a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657, 112 S. Ct. at

2693.  Our "toleration of negligence varies inversely with the length of the delay"

that the negligence causes.  *Clark*, 83 F.3d at 1353.  Analyzing the second factor,

therefore, overlaps some with the first:  the length of the delay impacts our

determination of whether the Government's negligence weighs heavily against it.

Two Eleventh Circuit cases involving negligent governmental delay set the

parameters of our analysis.  In the first case, *United States v. Clark,* 83 F.3d at

1350, the defendant, Clark, was charged with six counts related to controlled-

substance violations and one count of carrying a firearm during a drug-trafficking

crime.  *Id.* at 1351.  There was a seventeen-month delay between Clark's

indictment and arrest, during which he continually resided in the apartment listed

on the arrest warrant.  *Id.* at 1352.  A city police officer attempted to locate Clark

by visiting his apartment a single time, but no one answered the door.  *Id.*  The

police department then suspended its efforts to locate Clark, mistakenly believing

that the USMS was taking over.  *Id.*  Clark was finally arrested while sitting in a

college class.  *Id.*

The District Court dismissed the indictment after finding that the first three

*Barker* factors weighed heavily against the Government.  *See id.* at 1354.  This

Court reversed, reasoning that although the Government was negligent, it did not

deliberately cause the delay.  *Id.* at 1353-54.  We further reasoned that the

seventeen months of negligent Government delay was significantly less than the eight and a half years of such delay found intolerable by the Supreme Court in *Doggett v. United States*, 505 U.S. at 651–53, 112 S. Ct. at 2690–91, and was close to the fourteen and a half months of negligent Government delay found acceptable by the Fifth Circuit in *Robinson v. Whitley*, 2 F.3d 562, 568–70 (5th Cir. 1993).[13]

*Id.*

The second case, *United States v. Ingram*, 446 F.3d at 1332, went the other way.  In that case, the defendant, Ingram, claimed he was not a convicted felon when applying to purchase a firearm on February 28, 2000.  *Id.* at 1334.  The seller submitted Ingram's application to the National Instant Criminal Background Check System, and the application came up "denied."  *Id.*  In March of 2000, a special agent with the Bureau of Alcohol, Tobacco, and Firearms began investigating the transaction.  *Id.*  In July of that same year, the agent interviewed Ingram at his workplace, where Ingram admitted he was a convicted felon, but inaccurately claimed that his civil rights had been restored.  *Id.* at 1335.  During the interview, Ingram gave the agent his home address and phone numbers and told the agent his brother was a police officer.  *Id.*  The agent turned in his report and heard nothing

---

[13] We also cited *United States v. Beamon*, 992 F.2d 1009, 1015 (9th Cir. 1993), a case holding that a delay of seventeen to twenty months solely attributable to Government negligence was insufficient to excuse the defendants from showing actual prejudice.  *Clark*, 83 F.3d at 1354.

for over two years.  *Id.*  When the agent checked in with the U.S. Attorney's Office

in 2002, he was told Ingram's case had been "misplaced."  *Id.*

Ingram was eventually indicted in October of 2002—more than two and a

half years after his attempted firearm purchase—for making false statements to a

firearms dealer in connection with an attempted acquisition of a firearm.  *Id.*  The

indictment was sealed the same day it was entered and a warrant was issued for

Ingram's arrest.  *Id.*  The agent made a minimal effort to arrest Ingram.  He left

some voicemails for Ingram between 2002 and 2004.  *Id.*  Ingram returned at least

one call in December of 2002 and left his cellphone number and workplace address

for the agent to contact him.  *Id.*  The agent also drove by Ingram's residence and

workplace on several occasions, but did not exit his car.  *Id.*  Finally, in July of

2004, the agent called Ingram's workplace and a coworker gave the agent another

number at which to reach Ingram.  *Id.*  The agent left a message at this new number

and Ingram returned his call the next day.  *Id.*  Ingram surrendered in court on

August 3, 2004.  *Id.*

Ingram moved to dismiss the indictment on speedy trial grounds.  The

District Court denied the motion, but this Court reversed.  We noted that

"inordinate pre-indictment delay" influences "how heavily post-indictment delay

weighs against the Government," and held that the pre-indictment delay in

Ingram's case qualified as "inordinate."  *See id.* at 1339.  Thus, the nearly two

years of post-indictment delay weighed more heavily against the Government in light of the two and a half years of inordinate pre-indictment delay. *Id.* We also noted that the agent in *Ingram*, unlike the one in *Clark*, knew he was the only law enforcement agent responsible for Ingram's arrest; the Government's negligence, we concluded, was overall more egregious than it was in *Clark*. *Id.* So, considering the length of the pre- and post-indictment delays, the degree of Government negligence, the simplicity of the crime for which Ingram was indicted, the state of the proof against him when the indictment was entered, and the Government's knowledge of Ingram's whereabouts, this Court determined that the length of and the reason for the delay weighed heavily against the Government. *Id.* at 1340. We then remanded the case to the District Court with instructions to dismiss the indictment. *Id.*

B.

Before comparing this case to *Clark* and *Ingram*, we address the Appellants' argument that the Government's negligent conduct was "dilatory" and therefore *must* be weighed heavily against it.

As quoted in *Bibb, supra*, the precedential language relevant to the Appellants' argument provides that "Government actions which are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding that a speedy trial violation occurred." *Schlei*, 122 F.3d at 987 (citing *United States v.*

*Loud Hawk*, 474 U.S. 302, 315–17, 106 S. Ct. 648, 656–57 (1986)).  They contend

that the term "dilatory" does not require intent, and so it covers the Government's

negligence.  We disagree.  The Supreme Court's *Loud Hawk* case cited by *Schlei*

(which was in turn cited by *Bibb*) for the above proposition used the word

"dilatory" to describe purposeful action.  *See* 474 U.S. at 316, 106 S. Ct. at 656

(noting that there was "no showing of bad faith or dilatory *purpose* on the

Government's part") (emphasis added).  Further, dismissing an indictment is an

"extraordinary remedy."  *Villarreal*, 613 F.3d at 1349.  It is not one to be given to

defendants each time the Government's conduct unintentionally causes delay, as

the Appellants' interpretation suggests.  Finally, *Clark* and *Ingram* contemplate

that negligence alone *can* be, but not *must* be, weighed heavily against the

Government depending upon the circumstances.  *See Ingram*, 446 F.3d at 1339;

*Clark*, 83 F.3d at 1353–54.

The District Court found that the Government was grossly negligent, but not

that it purposefully caused delay or otherwise acted in bad faith.  Nothing in the

record indicates that this conclusion—one we view with "considerable deference,"

*Doggett*, 505 U.S. at 652, 112 S. Ct. at 2691—was clearly erroneous.[14]  The

Government's conduct was therefore not purposefully dilatory as the term is used

---

[14] To the contrary, as earlier noted, the Appellants conceded at oral argument that there was no evidence of bad faith here and that the reason for the delay "probably was an honest mistake."

20

in the pertinent case law.  We thus turn to whether the Government's negligence, in light of the length of the delay, was so great as to weigh heavily against it, and we hold that it wasn't.

The relevant length of delay in this case is twenty-three months, the length of the post-indictment delay.  The two-year pre-indictment delay is not factored into our analysis of whether the first two *Barker* factors weigh heavily against the Government.  Pre-indictment delay is accounted for if it is "inordinate."  *Ingram*, 446 F.3d at 1339.  The two and a half years of pre-indictment delay in *Ingram*, for example, was inordinate given the simplicity of Ingram's crime and of the investigation.  *See id.*; *see also Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").  In *Ingram*, the defendant committed a simple crime and the investigation appeared complete more than two years before the indictment.  Here, by contrast, the Appellants were convicted of conspiracy for actions involving two separate large-scale burglaries carried out by a number of participants.  Further, Donnelly's investigation included twenty-five witnesses located throughout numerous states, nine suspects, almost 100 exhibits, several search warrants, shoe-tread analysis, and more.  Donnelly was still collecting pertinent evidence until at least June of 2013, fewer than six months before the Appellants' November 2013 indictments.

Thus, unlike in *Ingram*, the pre-indictment delay here is not inordinate.[15] With the relevant period of delay at twenty-three months, this case is much closer to *Clark*'s seventeen-month delay than to *Ingram*'s combined delay of four and a half years. Moreover, courts outside this Circuit have consistently rejected defendants' arguments that similar delays excuse them from proving actual prejudice.[16]

The Government's negligence in the case before us is also more akin to its negligence in *Clark* than in *Ingram*. Like the investigator in *Clark*, Donnelly believed that the USMS was responsible for arresting the Appellants. Donnelly made at least a minimal attempt to follow up on the Appellants' arrest by conferring with Thompson, and he remained under the impression that he was not responsible for the arrests. Eventually, once Donnelly realized his mistake, he quickly effectuated the Appellants' arrests. The lack of effort exemplified by the

---

[15] Also underpinning this conclusion is our hesitance to incentivize rushing to indict defendants the moment there appears to be just enough evidence to do so. Among other maladies, such a practice would "increase the likelihood of unwarranted charges being filed" and even "add to the time during which defendants stand accused but untried." *See United States v. Lovasco*, 431 U.S. 783, 791–92, 97 S. Ct. 2044, 2049–50 (1977).

[16] *See, e.g.*, *United States v. Jackson*, 473 F.3d 660, 663, 666–68 (6th Cir. 2007) (holding that a twenty-two-month post-indictment delay was not enough to excuse the defendant from demonstrating actual prejudice where the Government did not give a valid reason for the delay); *Jackson v. Ray*, 390 F.3d 1254, 1263 (10th Cir. 2004) (concluding that an unexplained delay of four and one-third years did not excuse the defendant from having to prove actual prejudice); *United States v. Serna-Villarreal*, 352 F.3d 225, 232–33 (5th Cir. 2003) (concluding that a three-year and nine-month delay caused by Government negligence was too short to weigh heavily against the Government).

investigator in *Ingram* was more egregious, as that investigator knew he was solely responsible for Ingram's arrest.

Ultimately, the delay in this case was the result of a convergence of several factors, including: (a) a federal crime being investigated by a state law enforcement officer (albeit a federally-deputized one); (b) who was unfamiliar with federal indictment and arrest procedure; (c) and who was serving as a solo investigator for the very first time; (d) in a case where the prosecutor who secured the indictment left the U.S. Attorney's Office and was not replaced on the case for more than a year. Nevertheless, the Government's negligence here is worrisome. Despite his inexperience, Donnelly could have followed up with the USMS, contacted someone in the U.S. Attorney's Office, or reached out to a supervisor during the long period between the time that he conferred with Thompson and later learned that he was responsible for arresting the Appellants. But because the negligence in this case is weaker than that in *Ingram*—though perhaps only slightly—and because the relevant length of delay is less than half of *Ingram*'s, we conclude that neither the length of the delay, nor the reason for it, weigh heavily against the Government. The Government's good-faith attempt to arrest the Appellants was diligent enough to avoid warranting the "extraordinary remedy" of dismissing their indictments. *See Villarreal*, 613 F.3d at 1349.

IV.

In sum, two of the first three *Barker* factors do not weigh heavily against the Government.  The Appellants therefore must prove actual prejudice, which they did not do below and do not attempt to do here.  Accordingly, we affirm the District Court's denial of their motions to dismiss.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 18, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-12091-CC  ; 17-11497 -CC
Case Style: USA v. David Oliva
District Court Docket No: 1:13-cr-00463-LMM-LTW-2

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Team 2 Vacant, CC at 404-335-6130.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion